UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERICOOL WORLD LLC,<br><br>Plaintiff,<br><br>v.<br><br>IGLOO PRODUCTS CORPORATION,<br><br>Defendant. | Case No. 22-cv-02440-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND TERMINATING AS MOOT MOTION TO EXCLUDE EXPERT OPINIONS**<br><br>Re: Dkt. Nos. 47, 48, 49 |

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Vericool World LLC and Defendant Igloo Products Corporation. Dkt. Nos. 48, 49. Defendant has also moved to exclude the opinions of Plaintiff's damages expert, Roman Garagulagian. Dkt. No. 47. The Court heard argument on the motions. For the reasons detailed below, the Court **GRANTS** Defendant's motion for summary judgment, **DENIES** Plaintiff's motion for summary judgment, and **DENIES AS MOOT** Defendant's motion to exclude expert opinions.

I. **BACKGROUND**

Plaintiff Vericool World LLC initially filed this action in April 2022. *See* Dkt. No. 1. Plaintiff Vericool World LLC alleges that Defendant falsely claimed that its "Recool" biodegradable cooler was the first of its kind. *See generally* Dkt. No. 15 ("FAC"). Specifically, Plaintiff cites to references on Defendant's webpage and social media pages touting the Recool as the "world's first eco-friendly cooler," "the world's first cooler made from biodegradable materials," and the "world's first cooler made from 100% biodegradable materials." *See, e.g.*, Dkt. No. 51, Ex. B at 83–84, 87–94. Plaintiff contends that such claims about being the "first" are false because third-party Vericool Inc. had actually "invented, designed, marketed, and sold" fully

biodegradable coolers, named the "Vericooler III" and the "Ohana" cooler, before Igloo's Recool.[1] *See* Dkt. No. 55 at 2–9; *see also* Dkt. No. 55-2 ("Jobe Decl.") at ¶¶ 3–6, 8, 11–12, 23–26–32.

According to Plaintiff, Vericool Inc. filed a provisional patent application in February 2017 for a "solid compostable or recyclable shell formed primarily of a plant fiber"; debuted the Vericooler III at the Las Vegas Packaging Expo in September 2017; and sold the coolers to a subscription-based delivery service beginning in November 2017. *See* Jobe Decl. at ¶¶ 3–5, 11–12, 23–29. At the same time, Vericool Inc. also started manufacturing prototypes of a family-sized molded paper pulp cooler in October 2017; manufactured and publicly marketed its Ohana cooler in September 2018; and sold its first Ohana coolers beginning in November 2018. *See id.* at ¶¶ 6, 8, 27, 30–32. Both the Vericooler III and the Ohana were 100% recyclable and biodegradable. *See id.* at ¶¶ 4–6, 12, 19, 22, 30. Plaintiff further notes that the United States Patent and Trademark Office issued Vericool Inc. a patent for "thermally insulating packaging" in August 2018, and Vericool Inc. filed a patent application for "single and double layer biodegradable molded pulp coolers" in September 2018. *See* Dkt. No. 55 at 3; *see also* Dkt. No. 51, Ex. A (Patent No. 10,046,901); *see also* Jobe Decl. at ¶ 31.

In contrast, Plaintiff asserts that Igloo launched the Recool cooler much later, in April 2019, and only after seeing the Ohana cooler and discussing licensing options with Vericool Inc. *See* Dkt. No. 55 at 5–9; *see* Jobe Decl. at ¶¶ 33–41. Given Igloo's market power, Plaintiff asserts that its "false and misleading statements duped consumers and retailers into believing that Recool was in fact the first biodegradable cooler manufactured, stealing from Vericool [Inc.] the cachet that comes from producing a pioneering product." *See* FAC at ¶ 6; *see also* Dkt. No. 55 at 9–11.

Defendant disputes this timeline, urging instead that it began developing eco-friendly

---

[1] Plaintiff Vericool World LLC suggests in the complaint that it was "formerly Vericool Inc." *See* FAC at ¶ 11. However, the undisputed record appears to show that these are distinct entities, although founded by the same person—Darrell Jobe. *See* FAC at ¶¶ 11, 15, 18, 20, & n.1. Vericool Inc. was founded in 2015 and in approximately October 2021, the Board of Directors voted to liquidate the company through an assignment for the benefit of creditors. *See id.* at ¶ 18; Dkt. No. 48-24, Ex. 2 at 170:10–171:12; Dkt. No. 48-25, Ex. 3 at 31:8–35:7. Mr. Jobe was terminated as CEO shortly afterward. *See* Dkt. No. 48-24, Ex. 2 at 171:13–21. In December 2021 Mr. Jobe created Plaintiff Vericool World, which purchased certain of Vericool Inc.'s assets. *See* Dkt. No. 48-33, Ex. 11 (Response 20); *see also* Dkt. No. 48-59, Ex. 37 (Asset Purchase Agreement); *see also* Dkt. No. 55-2 at ¶¶ 44–45.

2

1  alternatives to traditional expanded polystyrene coolers as early as 2015.  *See* Dkt. No. 48-1
2  ("Hardesty Decl.") at ¶¶ 4–6.  According to Igloo, it began manufacturing prototypes of a new
3  pulp-based cooler in early 2017; had completed the final design of the Recool in early 2018; and
4  had thousands of sale-ready Recool coolers in hand by January 2019 when it publicly announced
5  the Recool cooler at an outdoor retailer event.  *See id.* at ¶¶ 7–12; *see also* Dkt. No. 48-4, Ex. 3;
6  Dkt. No. 48-5, Ex. 4; Dkt. No. 48-9, Ex. 8; Dkt. No. 48-12 ("Kepke Decl.") at ¶¶ 5, 7.  By April
7  2019, REI stores across the country were selling the Recool.  *See* Kepke Decl. at ¶ 11; *see also*
8  Dkt. No. 48-17, Ex. 5.  Igloo contends that in contrast, there is no evidence that the Ohana was
9  available for retail purchase until after the Recool was already available in retail stores.  *See* Dkt.
10 No. 48 at 7–8.  Vericool Inc.'s e-commerce website was not launched until May 2019, allowing
11 consumers to place orders electronically for the 42-quart Ohana cooler.  *See* Dkt. No. 48-24, Ex. 2
12 at 64:9–67:10; Dkt. No. 48-39, Ex. 40.
13     Plaintiff later purchased Vericool Inc.'s intellectual property, including its patents, in
14 December 2021.  *See* Dkt. No. 48-59, Ex. 37 (Asset Purchase Agreement).  And a few months
15 after this asset purchase, Plaintiff filed this action.  *See* Dkt. No. 1.  Plaintiff brings two causes of
16 action for (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and for
17 (2) violations of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*
18 ("UCL").  *See* FAC at ¶¶ 72–88.  Both parties have moved for summary judgment and Defendant
19 has moved to exclude the opinions of Plaintiff's damages expert.  Because the Court finds
20 Defendant's motion for summary judgment dispositive, it does not reach the motion to exclude.

21 **II.      LEGAL STANDARD**

22     Summary judgment is proper when a "movant shows that there is no genuine dispute as to
23 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
24 A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*
25 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if there is evidence
26 in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*
27 But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from
28 the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec.*

3

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

### III. DISCUSSION

#### A. Lanham Act Claim

Plaintiff alleges that Defendant violated § 1125(a)(1)(B) of the Lanham Act, which prohibits a person from "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" in "commercial advertising or promotion." *See* 15 U.S.C. § 1125(a)(1)(B). Defendant responds, in part, that any alleged misstatements about the Recool being the "first" biodegradable cooler are nonactionable. *See* Dkt. No. 48 at 12–15. Even construing the facts in the light most favorable to Plaintiff, as the Court must at this stage, the Court agrees with Defendant that the alleged misstatements do not go to the "nature, characteristics, or qualities" of the cooler as required under the Lanham Act. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor").

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127). However, as the Supreme Court observed, it "does not have boundless application as a remedy for unfair trade practices," and "can apply only to certain unfair trade practices prohibited by its text." *Id.* at 29 (quotations omitted). The Court also cautioned that the Lanham Act "does not exist to reward manufacturers for their *innovation* in creating a particular device; that is the purpose of the patent law and its period of exclusivity." *Id.* at 34 (quotation omitted) (emphasis added); *see also id.* at 37 (noting that the Lanham Act's "common law foundations . . . were not designed to protect originality or creativity").

4

With this backdrop in mind, and as relevant to Plaintiff's claim, courts have interpreted the "nature, characteristics, or qualities" of goods under § 1125(a)(1)(B) narrowly. The Ninth Circuit has explained that "the nature, characteristics, and qualities of [a product] under the Lanham Act are more properly construed to mean *characteristics of the good itself* . . . ." See *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (emphasis added). In *Sybersound*, the plaintiff was a karaoke record producer, and alleged that its competitors misrepresented that their karaoke records were "100% licensed and that all applicable royalties ha[d] been paid." *Id.* at 1141. The Ninth Circuit rejected the argument that the licensing status of the work was part of the nature, characteristics, or quality of the karaoke records and therefore actionable under the Lanham Act. *Id.* at 1144. Rather, the Court explained that characteristics of the good itself would include things like "the original song and artist of the karaoke recording, and the quality of its audio and visual effects." *Id.* Citing *Dastar*, the Court raised concerns that if something like the licensing status of a work was considered part of the nature, characteristics, or qualities of a good, then the Lanham Act could encroach on the Copyright Act. *Id.*

Relying on the Ninth Circuit's reasoning, the Federal Circuit similarly rejected a claim for false advertising based on claims that the plaintiff's competitor had promoted its "dual-cushion" basketballs as "innovative," "proprietary," and "exclusive." See *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1302–03, 1306–08 (Fed. Cir. 2009). Where the Ninth Circuit raised concerns about overlap with the Copyright Act, the Federal Circuit's reasoning turned on concerns about the Lanham Act encroaching on patent law. In *Baden*, the plaintiff alleged that the defendant falsely claimed that it—and not the plaintiff—had "created the innovation known as dual-cushion technology." *Id.* at 1307. The plaintiff also sold basketballs with "cushion control technology," and had obtained a patent for a ball with a "layer of padding underneath the outer covering." *Id.* at 1302. The Federal Circuit concluded that "[n]o physical or functional attributes of the basketballs [were] implied by [the] advertisements," and that instead they were related to the authorship of the technology. *Id.* at 1307. The court explained that the word "innovative," for example, "only indicates, at most, that its manufacturer created something new, or that the product is new, irrespective of who created it." *Id.* In short, the court explained that under *Dastar* and

5

*Sybersound* the plaintiff could not pursue a claim under the Lanham Act based on "the origin of an idea." *Id.* at 1308.

Here, Plaintiff asserts that "[t]his case involves 'non-Dastar' claims." *See* Dkt. No. 55 at 14. But in its opposition brief, Plaintiff offers no support for this conclusory assertion. *Id.* During the hearing, Plaintiff's counsel attempted to explain why Defendant's advertisements that describe the Recool as the "world's first" biodegradable cooler relate to a characteristic of the cooler itself rather than the "origin of an idea." Counsel reiterated that being "innovative" or the "first of its kind" would be a quality that consumers would care about when making purchasing decisions. *See also* FAC at ¶¶ 1, 6, 60–61, 63. Counsel also suggested that the novelty or innovativeness of the cooler was separate from its intellectual property status, so Plaintiff's claims would not directly interfere with copyright or patent law.

Plaintiff's argument is directly at odds with the Supreme Court's opinion in *Dastar*. As explained above, the Supreme Court there explicitly stated that the Lanham Act "does not exist to reward manufacturers for their *innovation* in creating a particular device" and that the Act's "common law foundations . . . were not designed to protect *originality* or *creativity*." *See Dastar*, 539 U.S. at 34, 37 (emphasis added). Yet that is precisely what Plaintiff seeks to protect in this case: the originality and novelty of its own cooler design. Plaintiff claims that Defendant misled consumers into believing that the Recool was innovative and original, sidestepping the prior existence of the Vericool III and Ohana coolers. Despite Plaintiff's suggestion to the contrary, the Court sees no meaningful distinction between claims of being the "first" and claims of inventorship. Plaintiff may not directly challenge the Recool as infringing its patents, but just as in *Dastar* and *Sybersound*, it is trying to protect its intellectual property rights through the Lanham Act. Plaintiff underscores this in its opposition, asserting that "[t]o vigorously defend its patent, Vericool World had to bring this claim." *See* Dkt. No. 55 at 18. But "[t]he rights of a patentee or copyright holder are part of a 'carefully crafted bargain,'" and for some reason, Plaintiff has chosen not to bring a patent infringement claim against Defendant. *See Dastar*, 539 U.S. at 33 (quotation omitted). Whatever might have motivated this strategic choice, clearly controlling law compels the Court to decline Plaintiff's invitation to extend such protections under the Lanham

6

Act.

During the hearing, Plaintiff cited two non-controlling cases that it did not include in its opposition brief: *Zobmondo Ent. LLC v. Imagination Int'l Corp.*, No. CV 09-02235 ABC PLAX, 2009 WL 8714439, at *1 (C.D. Cal. June 23, 2009), and *Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-CV-499, 2014 WL 11848751, at *5 (E.D. Tex. July 25, 2014), *report and recommendation adopted*, No. 6:12-CV-499, 2014 WL 11829325 (E.D. Tex. Aug. 15, 2014). Although the Court does not generally address arguments raised for the first time during a motion hearing, the Court briefly addresses them here for the sake of completeness.

In *Zobmondo*, the district court considered on a motion to dismiss whether use of the word "original" to describe a board game was actionable under the Lanham Act. The plaintiff alleged that it had "introduced the first board game based on the traditional conversational game known as 'would you rather.'" 2009 WL 8714439 at *1. Years later, the defendant introduced its own game, titled "Justin & David's Original Would You Rather … ? Board Game." *Id.* The court interpreted the plaintiff's complaint as focusing on "who physically manufactured the first ["would you rather"] board game," and stated that this was distinct from the question of who came up with the idea for such a board game. *Id.* at *3–4. The court further concluded that the date of manufacturing was part of the nature, quality, or characteristic of the game itself, and therefore did not interfere with copyright or patent law in the same way the claims in *Dastar* and *Sybersound* did. *Id.* at *4–5.

Respectfully, the Court simply is not persuaded by this reasoning. As an initial matter, the advertising at issue in *Zobmondo* did not reference the date of manufacture. It just contained the word "original." Although this can mean "first in time," the Oxford English Dictionary and Merriam-Webster Dictionary further define it as "the origin or source of something"[2] and "not secondary, derivative, or imitative."[3] In other words, by using the word "original," the defendant

---

[2] *See Original, Oxford English Dictionary*, https://www.oed.com/dictionary/original_adj?tab=meaning_and_use#33355041 (last visited Dec. 13, 2023).

[3] *See Original*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/original (last visited Dec. 13, 2023).

7

1  appears to have been touting the innovation of its game.  Yet the Supreme Court has stated that
2  patent law, and not the Lanham Act, offers protections for a manufacturer's "originality" and
3  "creativity."  *Dastar*, 539 U.S. at 34.  Moreover, even if the Court were to find that "original"
4  could refer to the time of manufacturing, the court in *Zobmondo* did not explain why such timing
5  is a quality or characteristic of the game itself.  In *Sybersound*, the Ninth Circuit explained that the
6  "nature, characteristics, and qualities" of the karaoke recording referred to things like the "quality
7  of its audio and visual effects."  *See* 517 F.3d at 1144.  Such attributes would affect the
8  consumer's experience rather than the rights of third parties.  Although when a product was
9  manufactured may have implications for patentability, such as whether it is considered novel or
10 non-obvious, in the Court's view it does not alter the nature of the product or a user's experience
11 with it.

12       Similarly, in *Blue Spike*, the plaintiff alleged that the defendants falsely claimed on their
13 websites that they were the "first to create content fingerprinting technology," and that competitors
14 are using "borrowed" technology.  2014 WL 11848751, at *4.  Relying on *Zobmondo*, the district
15 court asserted that "such statements do not concern who was the first to create an abstract idea, but
16 rather connote to the public who was the first to use the technology in a product."  *Id.* at *5.  But
17 critically, the court did not explain how being the first to use a specific kind of technology goes to
18 the "nature, characteristics, and qualities" of the good itself as opposed to the innovation of the
19 technology at issue.  *Accord Williams & Lake LLC v. Genesis Sys. LLC*, No. CV-17-00117-TUC-
20 CKJ, 2017 WL 6418937, at *6–7 (D. Ariz. Sept. 13, 2017) (distinguishing *Blue Spike* and
21 rejecting Lanham Act claim based on statements about being the inventor of a braking system); *R
22 & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *10–11
23 (C.D. Cal. May 1, 2019) (rejecting Lanham Act claim based on statements that product was
24 "new," "invented," and "fill[ed] a white space" in the market); *cf. Appliance Recycling Centers of
25 Am., Inc. v. JACO Env't, Inc.*, 378 F. App'x 652, 655 (9th Cir. 2010) ("No reasonable jury could
26 find statements referring to the patent, claiming to have designed or pioneered the system, or
27 claiming that the system was '[the defendant's]' to be either material or likely to cause future
28

United States District Court
Northern District of California

8

injury.").[4]

At bottom, Plaintiff appears frustrated that Igloo was able to successfully market and sell the Recool cooler, a competitor to its own biodegradable coolers. Although Plaintiff suggests throughout the briefing that Igloo may have stolen its ideas or infringed its patents, *see* Dkt. No. 55 at 6–9, this is not a patent case. Instead, Plaintiff chose to frame its claim solely under the Lanham Act, and it has not established that it has a viable claim under that statute. The Court therefore **GRANTS** Defendant's motion for summary judgment on this basis.

### B.   UCL Claim

Plaintiff also brings a claim for unfair competition under the UCL. Unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 252 (2011) (quotation omitted). Here, Plaintiff asserts that calling the Recool the "first" biodegradable cooler was both unfair and unlawful under the Lanham Act and therefore also a violation under the UCL. When asked during the hearing, Plaintiff's counsel confirmed that its UCL claim was not based on an independent legal theory and was instead derivative of its Lanham Act claim. The Court finds that the same reasoning discussed in Section III.A above applies to the UCL claim, and it too fails. *See* FAC at ¶¶ 82–88. The Court accordingly **GRANTS** Defendant's motion for summary judgment as to Plaintiff's UCL claim as well. *Accord Schrader Cellars, LLC v. Roach*, No. 21-CV-01431-SK, 2021 WL 9816545, at *3 (N.D. Cal. June 10, 2021) (collecting cases).

//
//
//
//
//

---

[4] As an unpublished Ninth Circuit decision, *Appliance Recycling Centers* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

9

**IV. CONCLUSION**

The Court **GRANTS** Defendant's motion for summary judgment, Dkt. No. 48; **DENIES** Plaintiff's motion for summary judgment, Dkt. No. 49; and **DENIES AS MOOT** Defendant's motion to exclude expert opinions, Dkt. No. 47.  The Clerk is directed to enter judgment in favor of Defendant and to close the case.

**IT IS SO ORDERED.**

Dated: 12/13/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge